STATE OF NORTH CAROLINA, PLAINTIFF v. DAVID FRANKLIN HURT, DEFENDANT

No. COA03-26

(Filed 6 April 2004)

**Sentencing— aggravating factor—joined with one other person in committing robbery**

The trial court erred in a second-degree murder case by finding as an aggravating factor that defendant, who was not charged with conspiracy, joined with one other person in committing the offense of robbery because the trial court did not find that defendant had joined with more than one other person in committing an offense which is required to find an aggravating factor under N.C.G.S. § 15A-1340.16(d)(2).

Judge WYNN dissenting.

Appeal by defendant from judgment entered 26 August 2002 by Judge Claude S. Sitton in Caldwell County Superior Court. Heard in the Court of Appeals 28 October 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Lisa Bradley Dawson, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Barbara S. Blackman, for defendant-appellant.*

ELMORE, Judge.

David Franklin Hurt (defendant) appeals from judgment imposing a sentence from the aggravated range following his plea of guilty to second degree murder. Because we conclude the trial court erred by finding as an aggravating factor that defendant joined with *one* other person in committing the offense of robbery and was not charged with conspiracy, we vacate defendant's sentence and remand to the trial court for re-sentencing.

Defendant was indicted on 15 March 1999 for first degree murder, first degree burglary, and common-law robbery arising from the 26 February 1999 slaying of Howard Cook (Mr. Cook). On 26 August 2002, defendant pled guilty to second degree murder in exchange for dismissal of the remaining charges.[1] The evidence presented at the plea hearing tended to show Mr. Cook died in his own home as a result of multiple stab wounds to his neck, head, chest, abdomen, and back. Hours after Mr. Cook was murdered, a police officer discovered Mr. Cook's nephew, William Parlier (Parlier), extremely intoxicated and lying in a ditch. Parlier told the officer his uncle had been murdered the night before and identified defendant as the murderer. Over the next several hours Parlier gave the police three statements concerning the previous night's events. Some of the details varied, but each statement implicated defendant as Mr. Cook's killer.

According to Parlier's third statement, which the State relied on as the factual basis for the plea agreement, Parlier and defendant were riding around in defendant's van drinking the night of Mr. Cook's murder. Defendant and Parlier pulled into a Hardee's parking lot and considered robbing it, but decided not to. They drove to Mr. Cook's home and knocked on the door. The fifty-seven year-old Mr. Cook, clad in pajamas, cracked the door, at which point defendant pushed the door open, causing Mr. Cook to fall. According to Parlier, defendant then hit Mr. Cook with his fists three or four times in the face. Defendant demanded money from Mr. Cook and instructed Parlier to remove the contents of Mr. Cook's wallet, which amounted to four

---

1. Defendant stipulated to having eight prior record points, for a prior record level of III.

dollars. Mr. Cook then grabbed a knife, which defendant immediately took from him. According to Parlier, defendant then told Mr. Cook that he was going to die, and Mr. Cook begged defendant to let him pray before defendant killed him. After briefly reading from his Bible, Mr. Cook ran into his bedroom and locked the door, and defendant kicked in the door. Mr. Cook then retreated into the bedroom closet and fell to the floor when defendant pushed open the closet door. According to Parlier, defendant again told Mr. Cook he was going to die before placing a blanket over Mr. Cook's head. Mr. Cook begged Parlier to help him and Parlier stated that he pleaded with defendant not to kill his uncle, but defendant stabbed Mr. Cook three or four times in the chest and abdomen. Mr. Cook again asked Parlier to help him and Parlier again pleaded with defendant to spare his uncle's life. Defendant walked away from Mr. Cook and Parlier removed the blanket from Mr. Cook's head and tried to stop the bleeding from his uncle's chest. According to Parlier, defendant then placed the blanket back over Mr. Cook's head and stabbed him repeatedly in the neck, chest, and abdomen. Defendant then cut the telephone cord and handed it, along with the knife and Mr. Cook's jacket and belt, to Parlier and told him they were leaving. After wiping down all the door handles to remove fingerprints, defendant and Parlier drove to the Rhodhiss Dam, where Parlier threw the knife, jacket, and belt into the water.

Based on Parlier's statements, defendant was questioned and denied being at Mr. Cook's home on the night of the murder or having any involvement in Mr. Cook's murder. Defendant stated that he and Parlier were drinking at defendant's trailer that night and that at some point Parlier borrowed defendant's van and left the trailer. Defendant stated that Parlier returned after about one hour and borrowed a pair of defendant's pants; Parlier told defendant he had "fallen in some mud and gotten his blue jeans muddy." Defendant stated that he and Parlier then went to the residence of a female acquaintance, where defendant went to sleep and awoke early the next morning to see Parlier driving off in defendant's van. Defendant was allowed to leave after giving this statement, but he was arrested the next day. After stating "[Parlier] was the one with blood all over him, and he had the money[,] [w]hat does that tell you?" defendant invoked his right to counsel. Later, in an interview with representatives of the district attorney's office, Mr. Cook's niece stated that Mr. Cook had loaned Parlier money in the past, that Parlier wanted more money, and that Parlier had threatened Mr. Cook a couple of weeks before the murder.

**STATE v. HURT**

[163 N.C. App. 429 (2004)]

The physical evidence collected by the police included four bloody one-dollar bills found in Parlier's possession; testing revealed the blood matched Mr. Cook's DNA profile. Blood on Parlier's shirt was also tested and found to match his uncle's DNA profile, as was blood from a pair of jeans found in defendant's van. Blood found on defendant's shirt and boot also matched Mr. Cook's DNA, and saliva on a cigarette butt found at the front door of Mr. Cook's residence matched defendant's DNA.

Defendant and Parlier were each arrested and charged with first degree murder, and Parlier pled guilty in April 2002 and was sentenced to life imprisonment in exchange for agreeing to testify against defendant. However, shortly before defendant was to stand trial, Parlier indicated he would not testify. The State thereafter agreed to accept defendant's plea of guilty to second degree murder.

At defendant's plea hearing, after presenting the State's factual basis for the plea as described above, the assistant district attorney stated that, in his opinion, "when [Parlier] described what [defendant] did in those statements [Parlier] was describing his own activities. . . . And based on that I came to the conclusion that William Parlier is the actual killer. . . . The more I talked to Mr. Parlier the more I realized that he did it." Nevertheless, the trial court found there were sufficient facts to accept defendant's plea of guilty to second degree murder and proceeded to sentencing.

Prior to sentencing, defendant presented evidence that he and his mother were repeatedly abused during his childhood by defendant's father. At the time of his incarceration, defendant was gainfully employed and his alcoholic mother and brother were living with him. Evidence was presented tending to show that defendant has a drinking problem and has four DWI convictions. Defendant presented statements from six inmates, each of whom claim Parlier admitted to them while incarcerated that he, not defendant, killed Mr. Cook. Defendant has had no disciplinary infractions while incarcerated. Since his incarceration defendant has been regularly ministered to by his uncle, a pastor, and has corresponded with congregants of his uncle's church.

At the close of evidence, the trial court found by the preponderance of the evidence the following statutory mitigating factors, pursuant to N.C. Gen. Stat. § 15A-1340.16(e) (2003): defendant (1) has supported his family in the past, (2) has a support system in a

Christian community, and (3) has a positive employment history, as well as two non-statutory mitigating factors, that defendant (1) has been a good inmate while incarcerated and (2) may have had a lesser role in the commission of the offense. The trial court also found by the preponderance of the evidence the following two statutory aggravating factors, pursuant to N.C. Gen. Stat. § 15A-1340.16(d) (2003): (1) defendant joined with *one other person*, Parlier, in robbing Mr. Cook and was not charged with committing conspiracy; and (2) the offense was especially heinous, atrocious, or cruel, as well as one non-statutory aggravating factor, that defendant took four dollars from Mr. Cook by force and by placing Mr. Cook in fear of bodily harm. The trial court found that the aggravating factors outweighed the mitigating factors and sentenced defendant to between 276 and 341 months imprisonment, the maximum aggravated range term for a class B2 felony at defendant's prior record level III. Defendant received credit for 1,277 days spent in confinement prior to the date of the judgment. Defendant appeals.

The single issue on appeal is whether the trial court's findings regarding aggravating and mitigating factors were supported by the evidence and were properly utilized by the trial court to support the sentence imposed from the aggravated range. We hold that they were not, and we therefore vacate defendant's sentence and remand to the trial court for re-sentencing.

Section 15A-1340.16(a) of our General Statutes states the trial court "shall consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence appropriate, but the decision to depart from the presumptive range is in the discretion of the court." N.C. Gen. Stat. § 15A-1340.16(a) (2003). Moreover, "[i]f the court finds that aggravating factors are present and are sufficient to outweigh any mitigating factors that are present, it may impose a sentence that is permitted by the aggravated range described in G.S. 15A-1340.17(c)(4)." N.C. Gen. Stat. § 15A-1340.16(b) (2003). It is well settled that "[a] trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

Defendant contends the trial court erred in finding as an aggravating factor that defendant joined with *one* other person, Parlier, in committing the offense of robbery and was not charged with conspiracy. We agree.

Our legislature has provided that grounds for sentencing a criminal defendant from the aggravated range exist where "[t]he defendant joined with *more than one* other person in committing the offense and was not charged with committing a conspiracy." N.C. Gen. Stat. § 15A-1340.16(d)(2) (2003) (emphasis added). Our examination of the record reveals that the trial judge marked through the words "more than" immediately preceding "one" and added the words "for robbery of victim" immediately following "conspiracy" in the space on the findings worksheet corresponding to this statutory aggravating factor. Likewise, the transcript of the plea hearing shows the trial court found as an aggravating factor "[t]hat the defendant joined *with his co-defendant,* William Wayne Parlier, in committing an offense of robbery from the person of the victim, Mr. Cook, and was not charged with committing conspiracy."

It is unclear from the record whether the trial court intended for this finding to constitute a statutory or a non-statutory aggravating factor. Because the trial court clearly did not find that defendant had joined with "more than one other person" in committing any offense, as required to find an aggravating factor under N.C. Gen. Stat. § 15A-1340.16(d)(2) (2003), and because no evidence was presented tending to show involvement by any party other than defendant and Parlier in Mr. Cook's murder, we conclude that, to the extent the trial court intended this finding to constitute a statutory aggravating factor, the trial court erred.

We are mindful that, when proved by a preponderance of the evidence, the trial court may find a non-statutory aggravating factor where it is "reasonably related to the purposes of sentencing." N.C. Gen. Stat. § 15A-1340.16(d)(20) (2003); *State v. Taylor,* 322 N.C. 280, 286, 367 S.E.2d 664, 668 (1988). Our legislature has provided that one of the primary purposes of sentencing is to "impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability." N.C. Gen. Stat. § 15A-1340.12 (2003). Moreover, our appellate courts have consistently stated that "the enhancement of a defendant's sentence must be based upon conduct which goes beyond that normally encompassed by the particular crime for which the defendant is convicted." *State v. Jones,* 104 N.C. App. 251, 257, 409 S.E.2d 322, 325 (1991).[2] "[A]ny factor used to increase or decrease a pre-

2. Although *Jones* was decided under the predecessor to the Structured Sentencing Act, our analysis is not affected. Under both the Structured Sentencing Act and the Fair Sentencing Act, the State is required to prove aggravating factors by a pre-

sumptive term must relate to the character or conduct of the offender." *Id.* at 257, 409 S.E.2d at 326. With respect to joining with others in the commission of an offense, our legislature has carefully crafted the statutory language to require that a defendant join with *more than one* other person to support the finding of an aggravating factor on these grounds. *See* N.C. Gen. Stat. § 15A-1340.16(d)(2). Presumably, this is so because our legislature has ascribed a higher degree of culpability to a defendant who joins with more than one accomplice to carry out a criminal enterprise. Therefore, we conclude the trial court erred to the extent that it intended for its finding that defendant joined with *one* other person, Parlier, in committing the offense of robbery and was not charged with conspiracy to constitute a non-statutory aggravating factor.

Our Supreme Court, reasoning that "it must be assumed that every factor in aggravation measured against every factor in mitigation, with concomitant weight attached to each, contributes to the *severity* of the sentence—the quantitative variation from the norm of the presumptive term[,]" has held that "in every case in which it is found that the judge erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing." *State v. Ahearn,* 307 N.C. 584, 602, 300 S.E.2d 689, 701 (1983). In light of the foregoing, we need not address defendant's contentions that the trial court erred in finding additional aggravating factors.

Because the trial court erred in finding as an aggravating factor that defendant joined with *one* other person, Parlier, in committing the offense of robbery and was not charged with conspiracy, we vacate defendant's sentence and remand to the trial court for re-sentencing.

Vacated and remanded.

Judge TIMMONS-GOODSON concurs.

Judge WYNN dissents.

---

ponderance of the evidence. See N.C. Gen Stat. §15A-1340.16(a) (2003) (Structured Sentencing Act); N.C. Gen. Stat. § 15A-1340.4(a) (repealed 1995) (Fair Sentencing Act).

WYNN, Judge, dissenting.

Because I conclude the trial court did not abuse its discretion by finding as an aggravating factor that Defendant joined with another person in the commission of the offense, I respectfully dissent from the majority opinion of my well-learned colleagues.

The State is required to prove the existence of an aggravating factor by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1340.16(a) (2003). In addition to the aggravating factors listed in section 15A-1340.16(d) of the General Statutes, the trial court in its discretion may find "[a]ny other aggravating factor reasonably related to the purposes of sentencing." N.C. Gen. Stat. § 15A-1340.16(d)(20) (2003). The purposes of sentencing are to

> impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

N.C. Gen. Stat. § 15A-1340.12 (2003). As noted by the majority, the trial court's decision to find a nonstatutory aggravating factor may be reversed only upon a showing that its decision is manifestly unsupported by reason.

In *State v. Manning*, 327 N.C. 608, 398 S.E.2d 319 (1990), our Supreme Court held the trial court could properly use as a nonstatutory aggravating factor the fact that the offense was committed for pecuniary gain, thereby reversing a decision by the Court of Appeals. The trial court in *Manning* sentenced the defendant for his convictions of the crimes of aiding and abetting in the solicitation to commit murder and conspiracy to commit murder. As a nonstatutory aggravating factor, the trial court found the crimes were committed for pecuniary gain. Although there was substantial evidence to support the factor, there was no evidence that the defendant was hired or paid to commit an offense. At the time, the Fair Sentencing Act allowed a trial court to find as a statutory aggravating factor that "[t]he defendant was hired or paid to commit the offense." N.C. Gen. Stat. § 15A-1340.4(a)(1)(c) (1988). The Court of Appeals reversed the decision of the trial court, holding the trial court could not use pecuniary gain as a nonstatutory aggravating factor where it could not be used as a statutory aggravating factor. *See State v. Manning*, 96 N.C.

App. 502, 504-05, 386 S.E.2d 96, 97 (1989), *reversed,* 327 N.C. 608, 398 S.E.2d 319 (1990). The Court of Appeals examined the statutory aggravating factor and the intent of the General Assembly in its enaction, reasoning that

> [t]he North Carolina Legislature has indicated that pecuniary gain may be considered as an aggravating factor only in very peculiar circumstances. In essence, the "hired or paid" language of N.C.G.S. § 15A-1340.4(a)(1)(c) requires the criminal act occur as a result of a bargained for arrangement. . . . [T]he Legislature sought to impose greater punishment where the crime arose from a contractual agreement involving pecuniary compensation.

*Manning,* 96 N.C. App. at 504, 386 S.E.2d at 97 (citation omitted). Because "the State did not prove by a preponderance of the evidence that the defendant participated in the crime as a result of a bargained for arrangement," the Court of Appeals held that pecuniary gain could not be used by the trial court as a nonstatutory aggravating factor and reversed the trial court. *See id.* at 504-05, 386 S.E.2d at 97.

On further appeal, our Supreme Court reversed the decision by the Court of Appeals, stating that "[b]ecause the evidence would not support the statutory aggravating factor in N.C.G.S. § 15A-1340.4(a)(1)(c) . . . does not mean that it cannot be used to support a nonstatutory aggravating factor" as long as it was reasonably related to the purposes of sentencing. *Manning,* 327 N.C. at 613-14, 398 S.E.2d at 322. The Supreme Court stated that "[a] person who conspires and solicits the taking of a person's life, so that he may live off the insurance proceeds from that person's death and live in that person's home, is more culpable by reason of those motives, and a sentence greater than the presumptive is warranted for purposes of deterrence as well as protection of the unsuspecting public." *Id.* at 615, 398 S.E.2d at 323. Because the Supreme Court deemed pecuniary gain as an incentive to commit a crime to be reasonably related to the purposes of sentencing, it explained that pecuniary gain "can be a nonstatutory aggravating factor unless there is something to preclude its use." *Id.* at 614, 398 S.E.2d at 322. For example, pecuniary gain could not be used as an aggravating factor if it was also used to support an essential element of the crime. As pecuniary gain was not an element essential to the crimes of solicitation to commit murder or conspiracy to commit murder, the *Manning* Court held that there was "nothing to prevent use of pecuniary gain as a *nonstatutory* aggravating factor." *Id.* at 615, 398 S.E.2d at 323.

In the instant case, the majority opinion concludes the trial court erred in finding as an aggravating factor that Defendant committed the offense with another person. The majority opinion examines the language of the statutory aggravating factor of section 15A-1340.16(d)(2) allowing aggravation where the defendant joins with more than one person to commit the offense and concludes that "our legislature has ascribed a higher degree of culpability to a defendant who joins with more than one accomplice to carry out a criminal enterprise." With no further explanation or analysis, the majority opinion concludes "the trial court erred to the extent that it intended for its finding that defendant joined with one other person, Parlier, in committing the offense of robbery and was not charged with conspiracy to constitute a non-statutory aggravating factor." I disagree with this conclusion.

There is substantial evidence of record tending to show Defendant joined with Parlier in committing the offense. This fact could be properly used by the trial court as a nonstatutory aggravating factor as long as it was reasonably related to the purposes of sentencing and nothing precluded its use. The fact that Defendant joined with another person in committing the crime, thereby committing the separate crime of criminal conspiracy, increased Defendant's culpability and was therefore reasonably related to the purposes of sentencing. As there were no grounds to preclude its use, the trial court acted within its discretion in using the factor that Defendant joined with another person to commit the crime as a nonstatutory aggravating factor. *See Manning*, 327 N.C. at 613-15, 398 S.E.2d at 322-23.