NO. COA09-442-2

NORTH CAROLINA COURT OF APPEALS

Filed:  15 July 2014

STATE OF NORTH CAROLINA

    v.                            Caldwell County
                                     No. 99 CRS 1677

DAVID FRANKLIN HURT


Appeal by defendant from judgment entered 4 April 2008 by Judge Thomas D. Haigwood in Caldwell County Superior Court. Originally heard in the Court of Appeals 1 October 2009, with opinion filed 16 November 2010.  An opinion reversing the decision of the Court of Appeals and remanding for consideration of issues not previously addressed by this Court was filed by the Supreme Court of North Carolina on 27 June 2013.

> *Roy Cooper, Attorney General, by Daniel P. O'Brien, Assistant Attorney General, for the State.*

> *Staples Hughes, Appellate Defender, by Barbara S. Blackman, Assistant Appellate Defender, for defendant-appellant.*


DAVIS, Judge.


This case is before this Court on remand from the Supreme Court of North Carolina.  Our Supreme Court held that for the reasons stated in *State v. Ortiz-Zape*, ___ N.C. ___, 743 S.E.2d 156 (2013), Defendant's rights under the Confrontation Clause

were not violated. *State v. Hurt*, ___ N.C. ___, 743 S.E.2d 173 (2013). On remand, we address Defendant's remaining arguments.

David Franklin Hurt ("Defendant") appeals from a judgment imposing a sentence in the aggravated range for second-degree murder. Specifically, Defendant alleges the trial court erred by (1) denying his motion to dismiss the aggravating factor due to the State's failure to establish that the offense was especially heinous, atrocious, or cruel as to him; (2) quashing the subpoena of a former prosecutor, thereby denying Defendant the opportunity to elicit the State's prior judicial admissions and depriving him of his rights to due process, trial by jury, presentation of a defense, and compulsory process; (3) overruling Defendant's objection and motion to strike testimonial evidence from a State Bureau of Investigation ("SBI") agent; and (4) refusing to admit one of Defendant's exhibits at the mitigation phase of his sentencing hearing. After careful review, we conclude that Defendant received a fair trial free from prejudicial error.

## Factual and Procedural Background

The State presented evidence tending to show the following facts: On 26 February 1999, law enforcement officers found Howard Nelson Cook ("Mr. Cook") dead in his home in Caldwell

County. Mr. Cook had sustained blunt force trauma, 12 major stab wounds, and various other "cutting wounds" and abrasions. Earlier that morning, Deputies Jason Beebee ("Deputy Beebee") and Joel Fish ("Deputy Fish") of the Catawba County Sheriff's Office responded to a call from Nancy and Jody Hannah about a white van that appeared to be stuck in their backyard. William Parlier ("Mr. Parlier") — Mr. Cook's nephew — and Defendant had been driving the van. As the deputies approached the scene, they encountered Mr. Parlier, who appeared to be intoxicated, walking in the road. The deputies also observed a white van parked in front of a house they later learned belonged to Paula Calloway ("Ms. Calloway"), Defendant's girlfriend.

The deputies arrested Mr. Parlier on an outstanding warrant and transported him to the Catawba County Jail. The deputies discovered four one-dollar bills with reddish-brown stains on Mr. Parlier's person. Deputy Fish returned to the location of the white van while other officers went to check on Mr. Cook at his house based on Mr. Parlier's statement that "[t]he man inside that house killed my uncle." Deputy David Bates of the Caldwell County Sheriff's Office found the door of Mr. Cook's house open and the body of Mr. Cook lying on the floor in a large puddle of blood.

Earlier that evening, Defendant and Mr. Parlier had arrived at Ms. Calloway's home in a white van. Ms. Calloway and Defendant went to sleep and when they awoke, Mr. Parlier was leaving in the van. Defendant and Ms. Calloway went looking for the van and found it stuck in a yard. Defendant freed the van and drove it back to Ms. Calloway's house. Soon thereafter, law enforcement officers came to Ms. Calloway's house, and Deputy Fish found Defendant in Ms. Calloway's bed, under the covers, wearing white pants with darkened reddish-brown stains. Defendant's sweatshirt and boots were also tarnished with reddish-brown spots. The SBI later conducted a DNA analysis on Defendant's sweatshirt and boots and determined that both of these items contained Mr. Cook's blood.

On 15 March 1999, Defendant was indicted by a grand jury in Caldwell County for first-degree murder, burglary, and robbery. Mr. Parlier was also charged with the first-degree murder of Mr. Cook. Pursuant to a plea bargain, Mr. Parlier pled guilty to first-degree murder and received a sentence of life in prison. After Mr. Parlier reneged on his promise to testify against Defendant, the State agreed to negotiate a plea with Defendant, and on 26 August 2002, Defendant pled guilty to second-degree

murder in exchange for the dismissal of the remaining charges.[1] The trial judge sentenced Defendant to the maximum aggravated range of 276 to 341 months imprisonment.

Defendant appealed, and on 6 April 2004, this Court vacated and remanded, concluding that the trial court erred in utilizing the fact that Defendant joined with *one* other person in committing the offense as an aggravating factor. *State v. Hurt*, 163 N.C. App. 429, 430, 594 S.E.2d 51, 52 (2004). We explained that N.C. Gen. Stat. § 15A-1340.16(d)(2) provides grounds for sentencing a defendant to the aggravated range in circumstances where despite joining *with more than one person* to commit the offense, the defendant was not charged with committing a conspiracy. *Id*. at 434, 594 S.E.2d at 55. Because the evidence indicated Defendant only conspired with one person — Mr. Parlier — we held that N.C. Gen. Stat. § 15A-1340.16(d)(2) did not apply. *Id.* We further concluded that Defendant's participation with Mr. Parlier was not a proper non-statutory aggravating factor because the General Assembly "carefully crafted the

---

[1] In the prosecutor's submission to the trial court of the factual basis for Defendant's plea to second-degree murder, he indicated that without Mr. Parlier's testimony against Defendant, the State's evidence that Mr. Parlier was the one who committed the stabbing was much stronger than the evidence against Defendant and that was the basis for proceeding against Defendant only on a charge of second-degree murder.

statutory language to require that a defendant join with *more than one* other person to support the finding of an aggravating factor on these grounds." *Id.* at 435, 594 S.E.2d at 55.

Our Supreme Court reversed the decision of this Court, concluding that the fact that Defendant joined with one other person in the commission of an offense yet was not charged with conspiracy was reasonably related to the purposes of sentencing and was thus a proper non-statutory aggravating factor under N.C. Gen. Stat. § 15A-1340.16(d)(20). *State v. Hurt*, 359 N.C. 840, 844, 616 S.E.2d 910, 913 (2005). The Court remanded for resentencing on different grounds in accordance with *Blakely v. Washington*, 542 U.S. 296, 159 L.Ed.2d 403 (2004), because Defendant's sentence exceeded the statutory maximum and the upward durational departure from the presumptive range was based solely on judicially-found facts. *Id.* at 845-46, 616 S.E.2d at 913-14. Upon reconsideration, our Supreme Court vacated its earlier opinion in part and remanded the case with instructions to remand to the trial court for a new sentencing hearing. *State v. Hurt*, 361 N.C. 325, 332, 643 S.E.2d 915, 919 (2007). The Supreme Court explained that "[i]f the State seeks an aggravated sentence upon remand, the trial court can consider

the evidence then presented to determine which aggravating factors may be submitted to the jury." *Id.*

A jury was empaneled for the purpose of determining the presence of aggravating factors on 2 December 2007 in Caldwell County Superior Court. A mistrial was declared due to misconduct by a juror. A new trial commenced on 31 March 2008. At the outset of the trial, the trial judge informed the jury that Defendant had previously entered a guilty plea for second-degree murder and that the State was now seeking to establish the existence of the aggravating factor that the offense to which Defendant had pled guilty was especially heinous, atrocious, or cruel.

The State presented evidence that Defendant had participated with Mr. Parlier in the vicious beating and stabbing of Mr. Cook. The State's evidence tended to show that (1) Defendant drove himself and Mr. Parlier to Mr. Cook's house; (2) Defendant's clothing and boots tested positive for Mr. Cook's blood; (3) a cigarette butt found outside Mr. Cook's door tested positive for blood and Defendant's DNA; and (4) Defendant drove Mr. Parlier and himself away from the crime scene and to his girlfriend's house.

Special Agent David Freeman ("Special Agent Freeman") of the DNA unit of the forensic biology section of the SBI testified that the end of the cigarette butt containing saliva found outside Mr. Cook's house matched Defendant's DNA and that a pair of blue jeans found in the van had Mr. Cook's blood on them as did Defendant's shirt and boots. The State also presented evidence regarding the specific manner of Mr. Cook's death. Dr. Patrick Lantz, a forensic pathologist and a medical examiner for Forsyth County, explained that six of the twelve major stab wounds struck vital organs. He further testified that each of these wounds would have been painful and would have caused bleeding both inside and outside of Mr. Cook's body. Dr. Lantz noted, however, that none of the wounds would have caused an immediate loss of consciousness, meaning that Mr. Cook likely would have been awake for approximately five to ten minutes before he lost consciousness due to blood loss. Dr. Lantz then opined that an additional five to ten minutes probably passed between the time Mr. Cook lost consciousness and the time he died.

At the conclusion of the State's evidence, Defendant made a motion to dismiss the jury's consideration of the aggravating factor that this offense was especially heinous, atrocious, or

cruel, arguing that the State had not presented sufficient evidence that Defendant had participated in the actual killing of Mr. Cook. Defendant contended that the State's evidence may have placed Defendant at the crime scene but that it did not establish Defendant's actual participation in the murder itself. The trial court denied Defendant's motion, and Defendant did not present any evidence at this proceeding.

On 3 April 2008, the jury returned a verdict finding that the offense was especially heinous, atrocious, or cruel. The trial court then heard evidence regarding mitigating factors, at which time Defendant argued that the State had offered evidence showing only that he brought Mr. Parlier to Mr. Cook's house, was present at the front door, and had driven himself and Mr. Parlier away from the scene of the crime. The trial court rejected the argument that Defendant was a passive participant in the murder and declined to find any non-statutory mitigating factors. The court found three statutory mitigating factors: (1) that Defendant supported his family; (2) that Defendant had a support system in the community; and (3) that Defendant had a positive employment history or was gainfully employed. The trial court found that the aggravating factor outweighed the factors in mitigation and that an aggravated sentence was

therefore appropriate. The trial court imposed a sentence in the maximum aggravated range of 276 to 341 months, and Defendant appealed.

Defendant raised five arguments on appeal. In *State v. Hurt*, 208 N.C. App 1, 702 S.E.2d 82 (2010), this Court held that the introduction of certain forensic evidence violated Defendant's rights under the Confrontation Clause, and, therefore, Defendant was entitled to a new sentencing hearing. For this reason, we declined to address Defendant's remaining arguments on appeal. *Id.* at 6, 702 S.E.2d at 87. Discretionary review was allowed, and our Supreme Court reversed, holding that for the reasons stated in *Ortiz-Zape* no violation of the Confrontation Clause had occurred. Therefore, we now consider Defendant's remaining four issues on appeal.

**Analysis**

**I. Denial of Motion to Dismiss**

Defendant first argues that the trial court erred in denying his motion to dismiss due to the State's failure to introduce substantial evidence that the offense was especially heinous, atrocious, or cruel. We disagree.

Questions of sufficiency of the evidence are reviewed under the substantial evidence test. *See State v. Brewington*, 352

N.C. 489, 525-26, 532 S.E.2d 496, 517-18 (2000), *cert. denied*, 531 U.S. 1165, 148 L.Ed.2d 992 (2001). In determining whether sufficient evidence supported the trial court's submission of the especially heinous, atrocious, or cruel aggravator to the jury, the reviewing court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *State v. Flippen*, 349 N.C. 264, 270, 506 S.E.2d 702, 706 (1998), *cert. denied*, 526 U.S. 1135, 143 L.Ed.2d 1015 (1999). "If the evidence supports a reasonable inference of defendant's guilt based on the circumstances, then it is for the jurors to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt." *State v. Campbell*, 359 N.C. 644, 682, 617 S.E.2d 1, 24 (2005) (citations, quotation marks, and brackets omitted), *cert. denied*, 547 U.S. 1073, 164 L.Ed.2d 523 (2006).

> To be substantial, the evidence need not be irrefutable or uncontroverted; it need only be such as would satisfy a reasonable mind as being adequate to support a conclusion. For purposes of a motion to dismiss, evidence is deemed less than substantial if it raises no more than mere suspicion or conjecture as to the defendant's guilt.

*State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 139-40 (2002) (citation and internal quotation marks omitted). The inquiry into whether substantial evidence has been presented

examines "the sufficiency of the evidence presented but not its weight." *State v. McNeil*, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (citation omitted).

A defendant's role or presence is simply one of the circumstances of a murder to be considered when viewing the evidence in the light most favorable to the State. Evidence showing a less active role by a defendant or absence from the scene does not preclude submission of the aggravating factor to the jury as a matter of sufficiency of the evidence but rather goes to the weight that the jury might put toward its consideration of the aggravating factor. *Brewington*, 352 N.C. at 525, 532 S.E.2d at 517 (holding that lack of participation does not preclude submission to jury of especially heinous, atrocious, or cruel aggravating factor).

Defendant contends that the State presented no evidence establishing that he directly participated in the killing of Mr. Cook as no evidence was presented regarding his role in the actual perpetration of the homicide. Accordingly, Defendant argues that the State's failure to submit any evidence that Defendant played an active role in the actual murder precludes a finding by the jury beyond a reasonable doubt that the murder was especially heinous, atrocious, or cruel as to Defendant.

However, our Supreme Court has held that lack of presence at or participation in a codefendant's gruesome murder does not preclude the submission to the jury of the especially heinous, atrocious, or cruel aggravating factor.  Rather, it is a matter for the jury to consider in determining the weight to give the aggravating factor.  *Id.*

In *Brewington*, the defendant was convicted of first-degree murder, conspiracy to commit murder, and arson.  *Id.* at 493, 532 S.E.2d at 499.  On appeal, he argued that the jury had impermissibly found the existence of the especially heinous, atrocious, or cruel aggravating factor based on the actions of his codefendants.  He conceded that the murders for which he was convicted were especially heinous, atrocious, or cruel.  *Id.* at 523, 532 S.E.2d at 516.  However, he maintained that although he had planned the murders, the jury could not have found the existence of the aggravating circumstance as to him because there was no evidence that he was personally responsible for the manner in which they were carried out or that he was actually present at the time they were committed.  *Id*.  Our Supreme Court rejected this argument, explaining that "[t]he fact that defendant was not present when the murders occurred, and that a codefendant actually committed the murders, is a matter that a

jury would properly consider in determining the *weight* to give an aggravating circumstance and in balancing the aggravating and mitigating circumstances." *Id*. at 525, 532 S.E.2d at 517.

Similarly, in the present case, Defendant does not dispute the fact that the manner in which Mr. Cook was murdered was sufficient to support the submission of the especially heinous, atrocious, or cruel aggravating factor to the jury. Instead, Defendant asserts that the aggravating factor was erroneously submitted to the jury as to him.

Recognizing that a defendant need not be physically present for the commission of the crime in order for this aggravating factor to be submitted to the jury, we believe that in this case, when viewing the evidence in the light most favorable to the State, a reasonable inference can be drawn that Defendant did actively participate in the murder of Mr. Cook. Unlike in *Brewington*, where the evidence established that the defendant was not physically present for the commission of the murders, the circumstantial evidence presented here permits a reasonable inference that Defendant had a personal role in the murder of Mr. Cook in that (1) Defendant had Mr. Cook's blood on him; (2) Defendant drove Mr. Parlier and himself away from the scene of the murder and to his girlfriend's house; and (3) a cigarette

butt with blood and Defendant's saliva on it was found at Mr. Cook's home.  *See, e.g., State v. Demery*, 113 N.C. App. 58, 61-64, 437 S.E.2d 704, 707-08 (1993) (holding that circumstantial evidence including blood typing and hair analysis was sufficient to submit to jury question of whether defendant was perpetrator of murder).  Accordingly, we hold that the trial court did not err in denying Defendant's motion to dismiss.

## II. Motion to Quash Subpoena

Defendant next contends that the trial court erred in granting the State's motion to quash the subpoena of Jason Parker ("Mr. Parker"), one of the prosecutors at the 2002 hearing on Defendant's guilty plea.  A motion to quash a subpoena is addressed to the sound discretion of the trial court and is not subject to review absent a showing of an abuse of discretion.[2]  *State v. Newell*, 82 N.C. App. 707, 709, 348 S.E.2d 158, 160 (1986).  An abuse of discretion occurs only where a trial court's ruling was "manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a

---

[2] In his brief, Defendant argues that the trial court's ruling on this issue deprived him of his constitutional rights to due process, trial by jury, presentation of a defense, and compulsory process.  However, Defendant did not raise these constitutional claims in the trial court.  Therefore, any such constitutional issues have been waived.  *State v. Moses*, 205 N.C. App. 629, 635, 698 S.E.2d 688, 693 (2010).

reasoned decision." *State v. White*, 349 N.C. 535, 552, 508 S.E.2d 253, 264 (1998) (citation and quotation marks omitted), *cert. denied*, 527 U.S. 1026, 144 L.Ed.2d 779 (1999).

At the hearing, Defendant sought to have Mr. Parker testify about the factual basis the State proffered at Defendant's plea hearing — that the State believed Mr. Parlier killed Mr. Cook and that the State had no physical evidence placing Defendant inside the house when the murder occurred. Defendant argues that Mr. Parker's statements regarding the State's acceptance of Defendant's guilty plea to second-degree murder established his guilt as merely an aider and abettor rather than an active participant in the murder. However, Defendant mischaracterizes Mr. Parker's statements at his plea hearing as judicial admissions. A recitation of the factual basis for a guilty plea is not a judicial admission. Rather, a prosecutor's summary of the facts supporting the plea is merely one procedural mechanism by which a judge may find that a factual basis exists for the plea. *See* N.C. Gen. Stat. § 15A-1022(c) (2013) (prohibiting trial judge from accepting guilty plea "without first determining that there is a factual basis for the plea" which may be based on "[a] statement of the facts by the prosecutor").

A judicial admission, conversely, is "a formal concession

made by a party . . . in the course of litigation for the purpose of withdrawing a particular fact from the realm of dispute. . . . Such an admission is not evidence, but rather removes the admitted fact from the field of evidence by formally conceding its existence." *Jones v. Durham Anesthesia Assocs., P.A.*, 185 N.C. App. 504, 509, 648 S.E.2d 531, 535 (2007) (citation omitted). Mr. Parker's statements were not "concessions," nor were they offered "for the purpose of withdrawing a particular fact from the realm of dispute." Consequently, we are not persuaded by Defendant's contention that the trial court's decision to quash the subpoena deprived him of the opportunity to elicit binding admissions on the State.

Defendant has failed to demonstrate that the trial court abused its discretion in quashing the subpoena of Mr. Parker. The trial court allowed the State's motion to quash after the State argued there was no compelling reason for Mr. Parker's live testimony and that requiring Mr. Parker to testify in person was unduly burdensome and unreasonable. In quashing the subpoena, the trial court expressly noted that there were other ways for Defendant to show the absence of the especially heinous, atrocious, or cruel aggravator without calling the

original prosecutor for Defendant's case to the stand.

Indeed, we note that during the mitigation phase, Defendant was able to introduce the statements previously made by Mr. Parker in his recitation during the plea hearing through the admission of Defendant's Exhibit 9, which contained Mr. Parker's statements as transcribed from the plea hearing. While Defendant maintains that he nonetheless suffered prejudice because Mr. Parker's statements were never before the jury, Defendant does not dispute the fact that he could have introduced this exhibit during the aggravation phase of the proceeding. As such, we cannot say that the trial court abused its discretion in quashing the subpoena.

**III. Denial of Motion to Strike Special Agent Freeman's Testimony**

Defendant next argues that the trial court erred in overruling his objection and motion to strike Special Agent Freeman's testimony regarding the general percentages of cases in which the SBI laboratory is able to find a DNA match. Defendant contends that this testimony was irrelevant and undependable "as the jury could not have reliably determined [Defendant's] role from the fact that blood matching the victim was found on his clothing" and that Special Agent Freeman

"essentially told the jury that a DNA match establishes that a person committed an offense, whereas the absence of a match establishes that a person did not."

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. Although a trial court's relevancy determinations are not discretionary and, therefore, are not reviewed for abuse of discretion, this Court gives such determinations great deference on appeal. *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006), *appeal dismissed and disc. review denied*, 361 N.C. 223, 642 S.E.2d 712 (2007). Relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." N.C.R. Evid. 403. A trial court has discretion whether or not to exclude evidence under Rule 403, and a trial court's determination will only be disturbed upon a showing of an abuse of that discretion. *Campbell*, 359 N.C. at 674, 617 S.E.2d at 20.

At Defendant's sentencing hearing, Special Agent Freeman was asked in what percentage of cases the SBI was able to find a

DNA match, and he testified as follows:

> Of the cases the [sic] we obtain approximately seventy percent of them are able to determine a match. In approximately thirty percent then we'll say that there isn't a match and that person couldn't have committed the crime.

Even assuming, without deciding, that this testimony lacked relevance, Defendant has failed to show that any such error was prejudicial. *State v. Oliver*, 210 N.C. App. 609, 615, 709 S.E.2d 503, 508 ("The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded. Further, it is the defendant's burden to show prejudice from the admission of evidence." (citations and quotation marks omitted)), *disc. review denied*, 365 N.C. 206, 710 S.E.2d 37 (2011).

This portion of Special Agent Freeman's testimony was from the preliminary stages of his direct examination, during which he was asked about his qualifications, the nature of DNA, and the process by which DNA matching is done in the laboratory. Special Agent Freeman had not yet begun testifying about Defendant's case in particular; rather, he was speaking generally about the nature of his work.

Moreover, Defendant misconstrues Special Agent Freeman's

testimony. Defendant asserts that, in essence, Special Agent Freeman told the jury that a DNA match indicates the person whose DNA was tested actually committed the offense. However, that is not what Special Agent Freeman stated in his testimony. Rather, he explained that where no match is found, the person in question could not have committed the crime. He did *not* affirmatively state that when a match is found, the subject definitely committed the crime.

Defendant has failed to show prejudicial error by the trial court in allowing this testimony. Accordingly, this argument is overruled.

**IV. Refusal to Admit Notebook Offered by Defendant**

Defendant's final argument on appeal is that the trial court erred in excluding Defendant's Exhibit 3 — a notebook prepared for the 2002 sentencing proceedings that contained recitations of Mr. Parlier's multiple confessions, a forensic blood spatter expert report, and medical reports regarding Defendant's alcohol consumption — during the mitigation phase of sentencing.

N.C. Gen. Stat. § 15A-1340.16(a) requires a trial court to consider evidence of aggravating and mitigating factors during sentencing. The trial court is given wide latitude in

conducting sentencing hearings, including the ability to weigh the credibility of the evidence in determining the existence of mitigating factors. *State v. Mabry*, 217 N.C. App. 465, 471, 720 S.E.2d 697, 702 (2011). A defendant who seeks a sentence in the mitigated range bears the burden of persuading the court by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1340.16(a) (2013).

"Although the formal rules of evidence do not apply in sentencing hearings, evidence offered at sentencing must be both pertinent and dependable. While the court *may* base its sentencing decision on reliable hearsay, [a] defendant is not entitled to consideration of hearsay evidence that is of doubtful credibility." *State v. Reed*, 93 N.C. App. 119, 125, 377 S.E.2d 84, 88 (internal citations and quotation marks omitted and emphasis added), *disc. review denied*, 324 N.C. 580, 381 S.E.2d 779 (1989). The trial court's failure to find a mitigating factor when evidence is offered in support of that factor will not be overturned on appeal unless the supporting evidence "is uncontradicted, substantial, and there is no reason to doubt its credibility." *State v. Lane*, 77 N.C. App. 741, 745, 336 S.E.2d 410, 412 (1985).

Defendant argues that the trial court committed reversible

error when it refused to consider his "mitigation report" because it deprived him of the opportunity to present mitigating evidence. We disagree. The trial court declined to admit the notebook marked as Defendant's Exhibit 3 and instead asked that Defendant call live witnesses from his witness list. In reaching this decision, the trial judge expressed his concerns about considering Defendant's written documents over live in-court testimony, stating as follows:

> [J]ust simply handing something up, a piece of paper writing, unsupported, unauthenticated, over objection — when you handed me a list of ten or fifteen witnesses that you were going to call. . . who have information set forth in this report on mitigation, some of which were brought back from prison units and are in facilities here adjacent to the courtroom and courthouse that could be produced. I'm going to sustain the [State's] objection. These people are going to be produced in this courtroom.

Thus, the trial court did not refuse to consider Defendant's mitigation evidence. Instead, the trial court was simply informing Defendant of its preference for live testimony. Furthermore, our review of the transcript reveals that Defendant was, in fact, allowed to introduce certain portions of the documents contained in Defendant's Exhibit 3, including (1) the affidavit of Mr. Parlier; and (2) parts of the plea hearing.

Defendant also offered live testimony from Mr. Parlier and testified on his own behalf during the mitigation phase. Defendant has failed to show how the trial court's refusal to admit Exhibit 3 in its entirety deprived him of the opportunity to present evidence of a mitigating factor. Therefore, Defendant's argument on this issue lacks merit.

## Conclusion

For these reasons, we conclude that Defendant received a fair trial free from prejudicial error and affirm the sentence imposed by the trial court.

NO PREJUDICAL ERROR; AFFIRMED.

Judges STEPHENS and HUNTER, JR. concur.