STATE OF NORTH CAROLINA v. RONNIE OLIVER

No. COA10-431

(Filed 5 April 2011)

**1. Evidence— prior crimes or bad acts—substantially similar—no fundamental error**

The trial court did not commit plain error in a first-degree statutory sexual offense, indecent liberties with a child, and crime against nature case by admitting evidence of defendant's prior bad acts. Some of the evidence was substantially similar to the acts of defendant toward the victim in the instant case and supported the purposes for which it was introduced. Admission of the remaining challenged evidence did not amount to fundamental error.

**2. Evidence— admission of witness testimony—within the trial court's discretion—supported by the record**

The trial court did not commit plain error in a first-degree statutory sexual offense, indecent liberties with a child, and crime against nature case by allowing the State to elicit allegedly misleading and irrelevant testimony from two witnesses. The trial court's decision was within its discretion and properly supported by the record.

**3. Evidence— prior crimes or bad acts—pattern jury instruction—substantial conformity with defendant's request**

The trial court did not commit plain error in a first-degree statutory sexual offense, indecent liberties with a child, and crime against nature case by failing to specifically instruct the jury that evidence admitted under Rule 404(b) could not be used

**STATE v. OLIVER**

[210 N.C. App. 609 (2011)]

to prove defendant's character or that he acted in conformity therewith. The trial court followed the pattern jury instruction format and the jury instruction was in substantial conformity with defendant's request.

**4. Jury— contact by member of public with juror—trial court's response—jurors capable of impartially rendering verdict—motion for mistrial properly denied**

The trial court did not err in denying defendant's motion for a mistrial in a first-degree statutory sexual offense, indecent liberties with a child, and crime against nature case where there was contact by a member of the public with a juror. Given the trial court's response to the incident, as well as the lack of evidence tending to show the jurors were incapable of impartiality in rendering their verdict, the trial court's denial of defendant's motion was within the trial court's discretion.

**5. Satellite-Based Monitoring— first-degree sexual offense— indecent liberties with a minor—not aggravated offenses**

The trial court erred in ordering defendant to register as a sex offender and enroll in a satellite-based monitoring program for the rest of his natural life. A conviction for first-degree sexual offense, in violation of N.C.G.S. § 14-27.4(a)(1), and a conviction for taking indecent liberties with a minor, in violation of N.C.G.S. § 14-202.1, are not aggravated offenses as defined by N.C.G.S. § 14-208.6(1a). The matter was remanded for a new satellite-based monitoring hearing.

Appeal by defendant from judgment entered 27 August 2009 by Judge James W. Morgan in Cleveland County Superior Court. Heard in the Court of Appeals 16 November 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III, and Kirby H. Smith, for defendant-appellant.*

BRYANT, Judge.

Where a witness gives testimony of prior misconduct by defendant, and the testimony of the witness is similar to that of the victim, i.e. their descriptions of defendant's conduct leading up to and during a sexual assault, and where the trial court determines that undue

prejudice does not substantially outweigh the probative value of the testimony, there is no error in admitting the testimony. For the reasons stated herein, we affirm.

## Facts

On 21 July 2008, defendant Ronnie Oliver was indicted on charges of first-degree statutory sexual offense, indecent liberties with a child, and crime against nature. On 25 August 2009, a trial before a jury commenced in Cleveland County Superior Court.

The evidence tends to show that in April 2003, defendant resided in the Town of Grover with Charlotte Kepel, a woman he had been dating. On weekends, Charlotte had custody of her two children, Catherine and Ted.[1] In April 2003, defendant was twenty-eight years old; Catherine turned ten. Catherine testified that after defendant moved in, he "[became] more like a father figure" until Catherine's tenth birthday. On that day, Catherine and defendant had been wrestling and "goof[ing] off" when defendant stated that he was going to take a shower. From the bathroom, defendant called Catherine to bring him a towel. Catherine testified that when she entered the bathroom, defendant was nude and masturbating. Defendant asked Catherine to remove her clothes. "[I]f you don't, I'm going to tell your mother and you're going to get in trouble and you're going to be grounded, you know." Catherine ran from the room but testified that defendant told her "that if I told anybody that he was going to kill me"; that "nobody would believe me, he'll go to jail and my mom will go to jail. So, I just kept it a secret." Over the following two weeks, defendant twice approached Catherine late at night, removed her clothes, and forced her to allow him to engage in sexual acts, including fellatio and digital penetration of her vagina. Defendant was charged with first-degree statutory sexual offense, indecent liberties with a child, and crime against nature for conduct on Catherine. Defendant was found guilty of all charges. The trial court entered judgment in accordance with the jury verdict and sentenced defendant to a term of 220 to 273 months active time, followed by thirty-six months of supervised probation. Defendant was also ordered to register as a sex offender and be placed under lifetime satellite-based monitoring. Defendant appeals.

On appeal, defendant raises the following issues: Did the trial court (I) commit plain error by admitting evidence of other bad acts;

---

1. Pseudonyms have been used to protect the identity of the minors.

(II) commit plain error by admitting the testimony of Kayla Gehring and Brittany Hammett; (III) err in instructing the jury; (IV) err in denying defendant's motion for a mistrial; and (V) err in ordering defendant to register as a sex offender and enroll in satellite-based monitoring.

*I*

**[1]** First, defendant argues the trial court committed plain error by admitting evidence of defendant's other bad acts. Specifically, defendant contends that Betsy Pall's testimony, as well as the testimony of Brittany Hammett, was not probative and was so dissimilar to the charges alleged by Catherine that the trial court violated Rule 404(b) in allowing the testimony.[2] We disagree.

> The plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to the appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings . . . .

*State v. Cummings*, 346 N.C. 291, 314, 488 S.E.2d 550, 563-64 (1997) (internal quotations and external citation omitted).

> Under North Carolina Rules of Evidence, Rule 404(b),

> > Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2009). Our Supreme Court has held that Rule 404(b) is

---

2. We must note that defendant failed to preserve at trial the issue he now argues on appeal. Defendant's objection to the 404(b) evidence was based on his assertion that Brittany's testimony concerned acts that occurred after the acts testified to by Catherine and, as such, were not relevant to defendant's state of mind.

a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (original emphasis). "In addition, 'the rule of inclusion described in *Coffey* is constrained by the requirements of similarity and temporal proximity.' " *State v. Carpenter*, 361 N.C. 382, 388, 646 S.E.2d 105, 110 (2007) (quoting *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002)). If the evidence meets these requirements, "the trial court must balance the danger of undue prejudice against the probative value of the evidence, pursuant to Rule 403." *Id.* at 388-89, 646 S.E.2d 110. However, "our decisions, both before and after the adoption of Rule 404(b), have been 'markedly liberal' in holding evidence of prior sex offenses 'admissible for one or more of the purposes listed [in the Rule] . . . .' " *Coffey*, 326 N.C. at 279, 389 S.E.2d at 54 (quoting 1 Brandis on North Carolina Evidence § 92 (3d ed. 1988)).

The State introduced several instances of prior acts based on Rule 404(b). Betsy Pall, a childhood friend of Catherine's testified that from the time she was ten until she reached twelve, defendant and Catherine's mother lived in the same apartment building as Betsy, her dad, and step-mom. Defendant worked with Betsy's dad. When Betsy was twelve, defendant and Charlotte moved away, but about a year later, defendant moved back alone. Betsy's father allowed defendant to stay in his home, while he helped defendant build a house nearby. When she was thirteen, her relationship with defendant changed. Late one night, she and defendant were wrestling and "roughhousing, and he grabbed my boob" but "I thought it was an accident, you know."

> Then later that year, . . . . we went to a horse sale. . . .We were there all day . . . . [M]y cousin [Sheri], who came with us,—she was about two years, a year, younger than me, I was thirteen. We were outside playing . . . . [Defendant] was watching, and [Sheri] and I were chasing each other around . . . . And [defendant] joined in, chasing me, and he again grabbed in inappropriate places, like he would grab my boob or my inner thigh, that type of thing.

Later that day, defendant, increasing his sexual attention toward Betsy, digitally penetrated her vagina. "He just whispered in my ear . . . no one would believe me if I said anything because I was letting it

happen, that it was my fault because I didn't—I wasn't screaming, and that I couldn't tell because again, no one would believe me." Later that same day, defendant drove Betsy home. While he drove, he exposed his penis and forced Betsy to masturbate him.

When she was fourteen, defendant was doing some handiwork in Betsy's house. At some point, all of the other adults in the house left.

> When I went down there [and realized we were alone . . .] I went to turn and leave, and he started to say again, you know, what we did wasn't right, that you can't tell, I'll tell your grandparents, they won't believe you, they'll believe me, I'm the adult, and that it was my fault because I hadn't done anything about it. . . .
>
> . . . He unzipped his pants and was exposing his penis, but . . . [I] told him if he didn't stop I was going to scream, that I was sick of it and that I would tell, that I didn't care if they believed me or not, that I wouldn't do anything else.

When Betsy was sixteen, her parents introduced her to Detective Tracy Curry who was investigating the allegations of sexual misconduct made by Catherine against defendant. Det. Curry asked Betsy if anything had ever happened between her and defendant, and she told him what happened. Before talking to Det. Curry, Betsy was unaware that anything had happened between defendant and Catherine: "I had no idea."

This other crimes evidence was introduced for the purpose of showing "common scheme or plan, identity, lack of mistake, motive and intent." The trial court properly allowed the evidence which was substantially similar to the acts of defendant toward the victim in the instant case and which supported the purposes for which it was introduced.

Both Catherine and Betsy testified that defendant had a strong personal relationship with one of their parents. Both testified that defendant used the threat of parental disbelief and disapproval to coerce submission and silence. Both testified that defendant initiated sexual conduct after wrestling or "roughhousing." Both testified that defendant digitally penetrated her vagina and that defendant forced her to masturbate him. The evidence indicated that the assault on Betsy was within two years of the assault on Catherine. The evidence also indicated a similar escalation of sexual acts toward each girl. We hold that defendant's conduct, as described by Betsy, was sufficiently similar to defendant's conduct, as described by Catherine. Such evidence was not unduly prejudicial and was of such probative value as

to not run afoul of Rule 404(b); therefore, the admission of Betsy's testimony did not amount to error, much less plain error.

Brittany Hammett, who was twenty years old at the time of trial, testified that defendant kissed her when she was thirteen. We hold that the admission of such testimony did not amount to *"fundamental* error, something so basic, so prejudicial, . . . that justice cannot have been done . . . ." *Cummings*, 346 N.C. at 314, 488 S.E.2d at 563. Accordingly, defendant's argument is overruled.

*II*

**[2]** Defendant next argues that the trial court committed plain error by allowing the State to elicit misleading and irrelevant testimony from Kayla Gehring and Brittany Hammett—particularly from Brittany who testified that she previously provided false statements. We disagree.

"Although a trial court's rulings on relevancy are not discretionary and we do not review them for an abuse of discretion, we give them great deference on appeal." *State v. Gant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006) (citing *State v. Streckfuss*, 171 N.C. App. 81, 88, 614 S.E.2d 323, 328 (2005)). "A trial court has discretion whether or not to exclude evidence under Rule 403, and a trial court's determination will only be disturbed upon a showing of an abuse of that discretion." *Id.* (citing *State v. Campbell*, 359 N.C. 644, 674, 617 S.E.2d 1, 20 (2005), *cert. denied, Campbell v. North Carolina*, 547 U.S. 1073, 164 L. Ed. 2d 523 (2006)).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401 (2009). "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." N.C. R. Evid. 402 (2009). "The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (citing *State v. Billups*, 301 N.C. 607, 272 S.E.2d 842 (1981); *State v. Cross*, 293 N.C. 296, 302, 237 S.E.2d 734, 739 (1977); N.C.G.S. § 15A-1443(a) (1983)). Further, it is defendant's burden to show prejudice from the admission of evidence. *See e.g. State v. Melvin*, 86 N.C. App. 291, 297, 357 S.E.2d 379, 383 (1987). Moreover, "[t]he State has the right to introduce evidence to rebut or explain evidence

elicited by defendant although the evidence would otherwise be incompetent or irrelevant." *State v. Cagle,* 346 N.C. 497, 505-06, 488 S.E.2d 535, 541 (1997) (quoting *State v. Johnston,* 344 N.C. 596, 605, 476 S.E.2d 289, 294 (1996)).

Defendant argues that it was error to allow Kayla and Brittany to testify about money given in exchange for a statement. On cross-examination of Catherine, defense counsel asked, "[d]o you have a problem with telling the truth?"; "Do you list yourself as being nineteen years old on [your MySpace page]?"; "Isn't it true that you paid or attempted to pay Kylie [sic] [Gehring] to make up stories on line?" In response, the trial court allowed the State to question Kayla and Brittany as to whether Kayla had been given or offered money to provide certain testimony. Kayla testified that she had not been given or offered money. Brittany, however, in a prior statement submitted to defendant's trial counsel, stated that Catherine gave money to Kayla in exchange for Kayla's statement to Det. Curry. At trial, Brittany recanted the prior statement made to defense counsel and testified under oath that she had made several false and conflicting statements prior to her trial testimony, including the statement that Catherine gave money to Kayla. Because defendant made Catherine's veracity an issue on cross-examination, the trial court's decision to allow the State to elicit, on rebuttal, testimony of Kayla and Brittany that Kayla was not given money by Catherine for her statement, was well within the trial court's discretion and properly supported by the record. Therefore, this argument is overruled.

III

**[3]** Next, although acknowledging that the trial court did follow the pattern jury instruction format, defendant nevertheless argues that the trial court erred in failing to specifically instruct the jury that evidence admitted under Rule 404(b) could not be used to prove defendant's character or that he acted in conformity therewith. We disagree.

Because defendant failed to object to the jury instruction, we review this contention for plain error. N.C. R. App. P. 10(a)(4); *see generally State v. Bowen,* 139 N.C. App. 18, 23, 533 S.E.2d 248, 251 (2000). "Under such an analysis, defendants must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict." *State v. Tirado,* 358 N.C. 551, 574, 599 S.E.2d 515, 531 (2004) (citing N.C. Gen. Stat. § 15A-1443(a) (2003)).

In *State v. Burr*, 341 N.C. 263, 461 S.E.2d 602 (1995), our Supreme Court addressed a similar argument. The defendant, Burr, requested an instruction in line with North Carolina Pattern Jury Instruction—Criminal 104.15[3], "to inform the [jurors] that they are not to consider such evidence as evidence of the defendant's character and limiting the purposes for which the jury may properly consider it." *Id.* at 292, 461 S.E.2d at 617. Pursuant to the request, the trial court instructed the jury that "the evidence of [the] defendant's prior misconduct . . . was admitted 'solely for the purpose of showing the identity of the person who committed the crime charged in this case, if it was committed,' and that they 'may consider it, only for the limited purpose for which it was received.' "*Id.* Though the trial court did not state "that the jury was not to consider the evidence as evidence of [the] defendant's bad character[,]" the Supreme Court held that the instruction was in substantial conformity with the defendant's request and overruled the assignment of error. *Id.* at 292, 461 S.E.2d at 617-18.

Here, the trial court stated the following, in regard to the evidence presented by Betsy:

> This evidence was received solely for the purpose of showing that the Defendant had a motive for the commission of the crime charged in this case, that the Defendant had the intent to commit the crime charged in this case, that there existed in the mind of the Defendant a plan, scheme, system or design involving the crime charged in this case, the absence of mistake and the absence of accident.

In light of *Burr*, where the defendant specifically requested an instruction containing the extra sentence that the jury not consider 404(b) evidence as evidence of bad character and where our Supreme Court held that the trial court properly limited the use of the evidence as it "was in substantial conformity with" defendant's requests, defendant cannot show plain error. *Id.* at 292, 461 S.E.2d at 617. This argument is overruled.

## IV

[4] Next, defendant argues that the trial court erred in denying his motion for a mistrial. Defendant contends that contact by a member of the public with a juror violated defendant's constitutional rights to a fair trial and an impartial jury. We disagree.

---

3. N.C.P.I.—Crim. 104.15 Evidence of similar acts or crimes. G.S. § 8C-1, Rule 404(b).

"In general, the trial court 'possesses broad discretionary powers' to conduct a fair and just trial." *State v. Garcell*, 363 N.C. 10, 44, 678 S.E.2d 618, 639 (2009) (citing *State v. Britt*, 285 N.C. 256, 272, 204 S.E.2d 817, 828 (1974)). However, under North Carolina General Statutes, section 15A-1061, "[t]he judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2009).

> "When there is a *substantial* reason to fear that the jury has become aware of improper and prejudicial matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial." *State v. Barts*, 316 N.C. 666, 683, 343 S.E.2d 828, 839 (1986) (emphasis added) (citations omitted). When error is alleged in this manner, it is typically because the possibility of some type of improper external contact involving a juror or jurors is brought to the trial court's attention. *See, e.g., Hurst*, 360 N.C. at 186-87, 624 S.E.2d at 315-16 (in which a prospective alternate juror stated during *voir dire* he had read a newspaper article concerning the case in the jury room); *State v. Willis*, 332 N.C. 151, 172, 420 S.E.2d 158, 168 (1992) (in which the trial court learned " 'one of the family members of one of the parties may have talked to one of the jurors' ").

*Garcell*, 363 N.C. at 44, 678 S.E.2d at 639-40. " 'Mistrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict.' " *State v. Taylor*, 362 N.C. 514, 538, 669 S.E.2d 239, 260 (2008) (quoting *State v. Smith*, 320 N.C. 404, 418, 358 S.E.2d 329, 337 (1987)).

In *Taylor*, the trial court was made aware of a report that a person from the gallery followed a juror to the juror's vehicle and then followed the vehicle for some distance. *Id.* at 537, 669 S.E.2d at 260. The trial court separately inquired of the juror who was followed and a juror who witnessed the events as to whether either believed they could be fair and impartial in their duty. Both jurors stated that the person's actions had not affected the juror's ability to be impartial. Upon receiving information that the jurors had discussed the incident with the remaining jurors, the trial court made a general inquiry of the jury as to whether anyone felt the incident affected his or her ability to be impartial. All jurors responded that they could remain impartial. *Id.* The defendant made a motion for a mistrial, which the trial court

denied. Our Supreme Court noted the lack of evidence "tending to show the jurors were incapable of impartiality or were in fact partial in rendering their verdict." *Id.* at 538, 669 S.E.2d at 260. The Court concluded that the denial of the defendant's motion for a mistrial was within the trial court's discretion. *Id.*

Here, after the State presented its closing argument, the trial court allowed a ten minute recess. Outside of the courtroom, there was an exchange wherein a juror was approached by a young man who said, "Just quit, and I'll let you go home." Upon return to the courtroom, the trial court inquired as to who witnessed the incident. Six jurors indicated being a witness. The trial court examined each juror individually as to what he or she saw or heard and whether the juror would "be able to fairly consider the evidence that you've heard during your deliberations, or will anything that you saw or heard have some effect on that?" Each juror responded that the incident would have no effect on their ability to follow the trial court's instructions nor their review of the evidence. Defendant's motion for a mistrial was denied.

Given the trial court's response to the incident, as well as the lack of evidence tending to show the jurors were incapable of impartiality in rendering their verdict, we hold the trial court's denial of defendant's motion for a mistrial was within the trial court's discretion. *See id.* at 538, 669 S.E.2d at 260. Accordingly, defendant's argument is overruled.

*V*

[5] Next, defendant argues that the trial court erred in ordering him to register as a sex offender and enroll in a satellite-based monitoring program for the rest of his natural life. Defendant contends that (A) the North Carolina General Assembly made first-degree sex offense with a child by an adult a "reportable conviction" subjecting the offender to satellite-based monitoring for life only for offenses committed on or after 1 December 2008. Defendant also contends that (B) his convictions for indecent liberties with a child and crime against nature do not satisfy the statutory prerequisites necessary to subject him to satellite-based monitoring for the rest of his natural life. For the reasons stated below, we vacate the trial court's order compelling defendant to enroll in satellite-based monitoring for his natural life.

This Court stated the standard of review for orders as to [satellite-based monitoring] in *State v. Kilby*: "[w]e review the trial court's findings of fact to determine whether they are supported

by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." —— N.C. App. ——, ——, 679 S.E.2d 430, 432 (2009) (quoting *State v. Garcia,* 358 N.C. 382, 391, 597 S.E.2d 724, 733 (2004) (citation, quotation marks, and brackets omitted), *cert. denied,* 543 U.S. 1156, 125 S. Ct. 1301, 161 L. Ed. 2d 122 (2005)).

*State v. Singleton,* —— N.C. App. ——, ——, 689 S.E.2d 562, 566 (2010).

Defendant argues that because first-degree sexual offense with a child by an adult under N.C. Gen. Stat. § 14-27.4A was not a "reportable conviction" subjecting an offender to satellite-based monitoring for offenses occurring prior to 1 December 2008, *see* 2008 N.C. Sess. Laws 117, when defendant's offenses occurred in 2003, the trial court erred in ordering defendant to enroll in satellite-based monitoring for life. However, defendant was convicted of first-degree sexual offense under N.C. Gen. Stat. § 14-27.4(a)(1). This offense has been a reportable conviction since 1 January 1996. *See* 1995 N.C. Sess. Law 545.

" 'Reportable conviction' means . . . [a] final conviction for an offense against a minor, a sexually violent offense, or an attempt to commit any of those offenses . . . ." N.C. Gen. Stat. § 14-208.6(4)(a) (2009). Pursuant to N.C. Gen. Stat. '14-208.6(5), first-degree sexual offense (in violation of N.C. Gen. Stat. § 14-27.4) and taking indecent liberties with children (in violation of § 14-202.1) are sexually violent offenses. N.C.G.S. § 14-208.6(5) (2009).

a) When an offender is convicted of a reportable conviction as defined by G.S. 14-208.6(4), during the sentencing phase, the district attorney shall present to the court any evidence that (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, or (v) the offense involved the physical, mental, or sexual abuse of a minor.

N.C. Gen. Stat. § 14-208.40A(a) (2009). "[W]hen making a determination pursuant to N.C.G.S. § 14-208.40A, the trial court is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction." *State v. Davison,* —— N.C. App. ——, ——, 689 S.E.2d 510, 517 (2009), *disc. review denied,* —— N.C. ——, —— S.E.2d ——

(2010). The trial court found that the offense of first-degree sexual offense and taking indecent liberties with a child were aggravated offenses. "If the court finds that the offender . . . has committed an aggravated offense . . . the court shall order the offender to enroll in a satellite-based monitoring program for life." N.C.G.S. § 14-208.40A(c) (2009).

" 'Aggravated offense' means any criminal offense that includes . . . (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old." N.C.G.S. § 14-208.6(1a) (2009). However, a conviction for first-degree sexual offense under N.C.G.S. § 14- 27.4(a) requires that the victim be only under the age of 13. N.C.G.S. § 14-27.4(a)(1). Moreover, a conviction for taking indecent liberties with children, in violation of § 14-202.1, requires only that the victim be under the age of 16. N.C.G.S. § 14-202.1 (2009). As we must give effect to the plain meaning of a statute, when the language is clear and without ambiguity, we must conclude that a conviction for first-degree sexual offense, in violation of § 14-27.4(a)(1), and a conviction for taking indecent liberties with a minor, in violation of § 14- 202.1, are not aggravated offenses as defined by § 14-208.6(1a). *See State v. Santos* , —— N.C. App. ——, —— S.E.2d (2011) (COA 10-668) (heard 11 January 2011) (holding that "that the trial court erred when it determined that first-degree sexual offense was an aggravated offense."); *Davison*, —— N.C. App. ——, —— 689 S.E.2d 510 (taking indecent liberties with a minor is not an aggravated offense). Defendant was not classified as a sexually violent predator and is not a recidivist. The trial court did not indicate whether the offense involved the physical, mental, or sexual abuse of a minor. On appeal, the State concedes that the conviction for first-degree sexual offense with a child is not a violation of G.S. 14-27.2A or G.S. 14-27.4A. Therefore, we vacate the order compelling defendant to enroll in satellite-based monitoring for his natural life and remand the matter for a new satellite-based monitoring hearing. *See State v. King*, —— N.C. App. ——, 693 S.E.2d 168 (2010) (remanding for new SBM hearing).

No error in part; vacated in part; and remanded.

Judges STROUD and BEASLEY concur.