An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1102

Filed: 3 March 2015

STATE OF NORTH CAROLINA

v.

MICHAEL LEE SHEETS

Wilkes County

Nos. 10 CRS 1087-89, 52859

Appeal by defendant from judgment entered 23 May 2014 by Judge William Z. Wood, Jr. in Wilkes County Superior Court. Heard in the Court of Appeals 3 February 2015.

> *Roy Cooper, Attorney General, by Jennifer T. Harrod, Assistant Attorney General, for the State.*

> *Staples Hughes, Appellate Defender, by James R. Grant, Assistant Appellate Defender, for defendant-appellant.*

TYSON, Judge.

Michael Lee Sheets ("Defendant") appeals from convictions of two counts of first degree sex offense with a child, two counts of crime against nature, and one count of indecent liberties with a child. We find no error in Defendant's convictions or the judgments entered thereon.

## I. Factual Background

On 8 November 2010, a grand jury indicted Defendant on two counts of first degree sex offense with a child, two counts of crime against nature, one count of indecent liberties with a child, and one count of disseminating obscenity to a minor under the age of thirteen.

The State's evidence tended to show that in 2009, J.P., age eight, lived with her mother, Rosalind Elmore ("Ms. Elmore") and Defendant, her mother's boyfriend. One day, Defendant told J.P. that "if [she] didn't do what he wanted [her] to do that he would lie and tell [her] mom . . . things that weren't true, which [she] knew would either hurt [her mom] or hurt [her]." J.P. testified Defendant made her perform oral sex on him on several occasions. She also testified Defendant touched her chest and put his mouth on her genitals.

At trial, J.P. testified Defendant would enter her name into a "Google" image search. J.P.'s true given name is "rather unusual" and is the same as that of a pornographic actress. Defendant would show J.P. the search results of images of a nude blonde woman. Defendant also made J.P. watch pornography on the computer.

On 2 August 2010, Defendant and Ms. Elmore ended their relationship and Defendant moved out of Ms. Elmore's house. That evening, J.P. told a relative, whom she called "Aunt Christina," about Defendant's behavior and actions. After talking to J.P., Aunt Christina informed J.P.'s parents. Her family subsequently filed a report with the Wilkes County Sheriff's Office.

On 10 August 2010, J.P.'s father took her to Brenner Children's Hospital in Winston-Salem, North Carolina. Elizabeth Goodman ("Ms. Goodman"), a sexual assault nurse examiner, interviewed J.P. J.P. told Ms. Goodman about Defendant's conduct, explaining "[she] got harassed" and "[b]ad stuff happened to [her]."

On 9 September 2010, J.P. was seen at Brenner Children's Hospital by Dr. Sara Sinal ("Dr. Sinal"), a pediatrician with the child abuse team. Dr. Sinal's examination of J.P. showed no physical signs of sexual abuse. This result was consistent with Defendant's actions as J.P. had described them.

SBI Special Agent Alan Flora ("Agent Flora") testified that he had replicated Defendant's Google image search of J.P.'s name. Prior to his testimony, Defendant renewed a pre-trial motion *in limine* objecting to Agent Flora's anticipated testimony. After a lengthy *voir dire* of Agent Flora, and over Defendant's objection, the trial court permitted Agent Flora to testify about the results of his Google image search. Agent Flora testified he performed the Google image search of J.P.'s name on his state-issued computer and the search returned "numerous images of a nude blonde female."

Defendant testified on his own behalf. He denied engaging in any inappropriate behavior with J.P. He could not offer an explanation for J.P.'s allegations that he had sexually abused her.

At the close of the State's evidence, upon Defendant's motion, the trial court dismissed the dissemination of obscenity to a minor charge. On 23 May 2014, the jury returned verdicts finding Defendant guilty on the remaining charges.

The trial court arrested judgment on the crime against nature convictions and consolidated one of the sex offense convictions with the indecent liberties conviction. Defendant was sentenced to two concurrent active terms of 192-240 months imprisonment. Defendant gave notice of appeal in open court.

## II. Issues

Defendant argues the trial court erred by (1) closing the courtroom to bystanders without making the necessary findings to support closure; and (2) admitting evidence of the Google image search performed by Agent Flora. In his brief, Defendant also argued the trial court erred by referring to J.P. as "the victim" in the jury charge. Defendant conceded this issue at oral argument, in light of our Supreme Court's holding in *State v. Walston*, __ N.C. __, 766 S.E.2d 312 (2014) (holding trial court's use of the word "victim" in pattern jury instructions was not error).

## III. Analysis

## A. Courtroom Closure

Defendant asserts his federal and state constitutional rights to a public trial were violated by the trial court's decision to close the courtroom during J.P.'s testimony. He argues the trial court failed to make the requisite findings to support closure. We disagree.

## 1. Standard of Review

Defendant failed to object to the State's motion to exclude bystanders from the courtroom during J.P.'s testimony. Defendant has failed to preserve this issue for

appellate review. "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) (citation omitted).

## 2. Rule 2 of the North Carolina Rules of Appellate Procedure

Nevertheless, Defendant asks this Court to invoke Rule 2 of the Appellate Rules of Procedure to review the merits of his argument. Under Rule 2, this Court may suspend the rules in order "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." N.C.R. App. P. 2 (2013).

Our Supreme Court has addressed the appropriateness of invoking Rule 2 on many occasions. "Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." *State v. Hart*, 361 N.C. 309, 315-16, 644 S.E.2d 201, 205 (2007) (citations and quotation marks omitted). "[T]he exercise of Rule 2 was intended to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions." *Id.* at 316, 644 S.E.2d at 205 (citations and internal quotation marks omitted).

Nothing in either the record or either party's brief demonstrates "exceptional circumstances" sufficient to justify suspending or varying the rules in order to prevent "manifest injustice" to Defendant. *Id.* at 315, 644 S.E.2d at 205.

Pursuant to N.C. Gen. Stat. § 15-166, "[i]n the trial of cases for rape or sex offense . . . the trial judge may, during the taking of the testimony of the prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case." N.C. Gen. Stat. § 15-166 (2013). The general rule is that

> [i]n clearing the courtroom, the trial court must determine if the party seeking closure has advanced an overriding interest that is likely to be prejudiced, order closure no broader than necessary to protect that interest, consider reasonable alternatives to closing the procedure, and make findings adequate to support the closure.

*State v. Jenkins*, 115 N.C. App. 520, 525, 445 S.E.2d 622, 625 (citation omitted), *temp. stay allowed*, 336 N.C. 784, 447 S.E.2d 435, *disc. review denied*, 337 N.C. 804, 449 S.E.2d 752 (1994); *see also Waller v. Georgia*, 467 U.S. 39, 48, 81 L.Ed.2d 31, 39 (1984).

This Court has held that "where defendant consents to the closure, the trial court is not required to make specific findings of fact." *State v. Starner*, 152 N.C. App. 150, 154, 566 S.E.2d 814, 817, *cert. denied*, 356 N.C. 311, 571 S.E.2d 209 (2002). *Cf. Waller*, 467 U.S. at 48, 81 L.Ed. at 39 (requiring the trial court to make closure no broader than necessary, consider alternatives, and make findings of fact to support closure where closure ordered *over defendant's objection*).

The State moved to exclude bystanders from the courtroom during J.P.'s testimony pursuant to N.C. Gen. Stat. § 15-166. When the trial court inquired as to

defense counsel's position on this matter, Defendant's attorney responded, "I don't wish to be heard on that either, Your Honor." After defense counsel acquiesced to the State's motion, the trial court granted the motion and engaged in the following colloquy with the State:

> MS. POSEY: Yes. Okay. And I believe Your Honor needs to make specific findings of fact that I have outlined in the motion, that I have advanced an overriding interest for the victim to be able to testify, that closure is no broader than necessary to protect that interest, and that the Court has considered reasonable alternatives to closing the procedure.
>
> THE COURT: Sure. I will so find.

The trial court later entered a written order, which included the *Waller* factors above and excluded bystanders from the courtroom during J.P.'s testimony.

In light of Defendant's consent to the closure of the courtroom, we exercise our discretionary authority and decline to invoke Rule 2. This argument is dismissed.

## B. Agent Flora's Google Image Search

Defendant asserts the trial court erred by admitting Agent Flora's testimony regarding the Google image results from the search he performed. He argues this testimony was speculative, irrelevant, and unfairly prejudicial.

### 1. Standard of Review

"Whether evidence is relevant is a question of law, thus we review the trial court's admission of the evidence *de novo*." *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010) (citation omitted). However, whether to exclude evidence is a

decision within the trial court's discretion. *State v. Peterson*, 361 N.C. 587, 602, 652 S.E.2d 216, 227 (2007) (citation omitted), *cert. denied*, 552 U.S. 1271, 170 L.Ed.2d 377 (2008). Thus, "a trial court's ruling will be reversed on appeal only upon a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision." *Kirby* at 457, 697 S.E.2d at 503 (citation and internal quotation marks omitted).

## 2. Analysis

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. Relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." N.C.R. Evid. 403.

Defendant argues Agent Flora's testimony was speculative and irrelevant because of the potential differences between conducting the search on the SBI's computer as compared with Defendant's computer at a different date and time.

Agent Flora's testimony was introduced at trial to corroborate J.P.'s allegation that Defendant had showed her images of a nude blonde woman, which were the results returned from a Google image search of J.P.'s name. Agent Flora did not intend for his Google image search to be an exact replication of Defendant's alleged Google image search. Rather, Agent Flora performed the Google image search of the

same "rather unusual" name shared by both J.P. and the pornographic actress in an effort to corroborate J.P.'s allegations by establishing that this information was available on the Internet. "An individual piece of evidence need not conclusively establish a fact to be of some probative value. It need only support a logical inference of the fact's existence." *State v. Payne*, 328 N.C. 377, 401, 402 S.E.2d 582, 596 (1991). Agent Flora's Google image search, which returned the same results as J.P. had alleged and testified to, was relevant because it directly corroborated J.P.'s testimony.

Defendant asserts even if Agent Flora's testimony was relevant, it should have been excluded under Rule 403 as unfairly prejudicial. N.C.R. Evid. 403. Defendant argues that jurors generally assign extraordinarily high probative value to expert opinions and "the trial court's admission of this wholly speculative evidence from an expert in computer forensic examination risked misleading the jury about the strength of that evidence." We disagree.

"[I]t is defendant's burden to show prejudice from the admission of evidence." *State v. Oliver*, 210 N.C. App. 609, 615, 709 S.E.2d 503, 508 (citation omitted), *disc. review denied*, 365 N.C. 206, 710 S.E.2d 37 (2011). In order to show prejudice, Defendant must show that "a different result likely would have ensued had the evidence been excluded." *Id.* (citation and quotation marks omitted).

On cross-examination, defense counsel elicited an explanation from Agent Flora that his Google image search was not identical to the search J.P. described. Agent Flora testified that a "safe search" filter would affect search results by

eliminating explicit content and Google search results change with the passage of time.  Agent Flora testified to the search he performed and its limitations, such as the fact that certain factors could have caused different search results on his computer versus Defendant's computer.

The jury was provided a balanced view of the appropriate weight to give Agent Flora's testimony.  Defendant has failed to show any prejudicial error by the trial court in allowing this testimony.  Defendant's argument is overruled.

## **Conclusion**

Defendant received a fair trial free from prejudicial errors he preserved and argued.  We find no error in Defendant's convictions or the trial court's judgment.

NO ERROR.

Judges ELMORE and DAVIS concur.

Report per Rule 30(e).