STROUD, Judge.
 

 *695
 
 Moses N. Kpaeyeh ("Defendant") immigrated from Ivory Coast to Texas in early 2004 with his wife, their children, and a female child ("Mary"), the daughter of his wife's sister. Mary had fled from civil unrest in her home country of Liberia. According to the State's evidence, Defendant began sexually assaulting Mary that same year, when Mary was fourteen years old. The sexual assaults included vaginal intercourse. Defendant, his family, and Mary moved from Texas to Greensboro in 2005, when Mary was fifteen. The sexual assaults continued, and Mary became pregnant when she was fifteen years old.
 

 According to Mary's testimony at trial, she first hid the fact that Defendant was the father of her child ("the child") because Defendant had threatened to hurt her and her family in Liberia if she ever reported the sexual assaults. The child was born in early 2006, and Mary's parental rights to the child were terminated in May 2008. Following the termination proceeding, Mary told a social worker that Defendant was the father of the child. DNA paternity testing, conducted in 2010, confirmed that Defendant was the father of the child, and the Greensboro police Department was informed of the results of the DNA testing in December 2010. Defendant was arrested on 5 April 2011 and indicted on 16 May
 
 *696
 
 2011 for one count each of statutory rape, N.C. Gen.Stat. § 14-27.7A(a),
 
 [1]
 
 and taking indecent liberties with a child, N.C. Gen.Stat. § 14-202.1(a)(1).
 

 Defendant's trial commenced on 3 November 2014. Between his arrest and his trial, Defendant was represented by three different attorneys. The first, a court-appointed private attorney, represented Defendant until that attorney left private practice in April 2013. Defendant's second attorney was a public defender, and represented Defendant until August 2014, when Alvin Hudson II ("Hudson") was hired by Defendant and took over representation of Defendant. Beginning in July 2011, and continuing periodically until at least mid-September 2013, Defendant sent self-authored letters directly to the Guilford County Clerk of Superior Court requesting a "speedy trial," but Hudson was the first of Defendant's attorneys to move for a speedy trial. Hudson filed a motion on 30 October 2014 in which he argued that Defendant's right to a speedy trial had been violated and that the charges against Defendant should therefore be dismissed. Specifically, the motion stated that "as a result of the extensive delay in the arrest and prosecution of the ... case, [D]efendant has been prejudiced
 
 *584
 
 by an inability to adequately assist his defense attorney in preparation for his trial. Nor has he been able to locate any possible witnesses for the defense."
 

 Defendant's motion to dismiss was denied by order entered 6 November 2014,
 
 nunc pro tunc
 
 3 November 2014. Defendant was brought to trial on 3 November 2014, and was found guilty on 5 November 2014 of one count each of statutory rape and taking indecent liberties with a child. Defendant was sentenced to an active term of 288 to 355 months for the statutory rape conviction, to follow an active sentence of 19 to 23 months for the conviction of taking indecent liberties with a child. The trial court also found, based solely upon the statutory rape conviction, that Defendant "must enroll in satellite-based monitoring for the rest of his natural life." Defendant appeals.
 

 Defendant makes three arguments on appeal, which we will address in the following order: (1) the trial court erred in denying Defendant's motion to dismiss based upon the alleged violation of Defendant's right to a speedy trial, (2) the trial court erred in denying Defendant's motion to dismiss the charge of indecent liberties at the close of the evidence, and (3) the trial court erred in requiring Defendant to submit to lifetime satellite-based monitoring. Because Defendant failed to preserve
 
 *697
 
 the issue of satellite-based monitoring by filing a timely written notice of appeal, Defendant has petitioned this Court for writ of
 
 certiorari,
 
 requesting that we address this issue. We grant Defendant's petition, and address below his argument pertaining to satellite-based monitoring.
 

 I. Speedy Trial
 

 Defendant argues the trial court erred in denying his motion to dismiss all charges against him because his right to a speedy trial had been violated, and he was prejudiced by the delay. We disagree.
 

 Our Supreme Court has stated:
 

 [T]he United States Supreme Court identified four factors "which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial under the federal Constitution. These factors are: (i) the length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right to a speedy trial, and (iv) whether the defendant has suffered prejudice as a result of the delay. We follow the same analysis when reviewing such claims under Article I, Section 18 of the North Carolina Constitution.
 

 State v. Grooms,
 

 353 N.C. 50
 
 , 62,
 
 540 S.E.2d 713
 
 , 721 (2000) (citations omitted). As to the first factor, we hold that the more than three-year delay between Defendant's indictment and trial is sufficiently long to trigger analysis of the remaining factors.
 

 Id.
 

 Concerning the second factor, the reason for the delay, a "defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution."
 

 Id.
 

 In its order denying Defendant's motion to dismiss, the trial court included the following findings relevant to the reasons for the delay: The State reasonably believed, based upon interactions with Defendant's first two attorneys and the DNA evidence proving that Defendant was the father of Mary's child, that negotiations would eventually end in a plea; Defendant's first two attorneys did not "indicate [they were] in a hurry to try this case to a jury or otherwise express concern ... about the age of the case[;]" the State learned in December 2013 that Hudson was likely to take over Defendant's case and Hudson made a general appearance in the case on 1 August 2014; "[f]rom December of 2013 to 1 August 2014, Defendant's attorney representation was in question[;]" and finally, Hudson informed Defendant's second attorney in January 2014 that Hudson would be taking over Defendant's case and, therefore, Defendant's second attorney
 
 *698
 
 "was unable to accept or reject any plea offer or otherwise set the case for trial." In addition, Defendant "formally rejected a plea offer from the State" on 25 August 2014, and was given a new court date of 3 November 2014. Defendant's trial did begin on 3 November 2014.
 

 We hold that these findings were supported by competent evidence, and that they support the trial court's conclusion that the delay "was not caused by the neglect or
 
 *585
 
 willfulness of the prosecution, nor was the delay the result of willful misconduct by the prosecution." The evidence tends to show that the changes in defendant's representation caused much of the delay. Either miscommunication between Defendant and his first two attorneys, or neglect on the part of those attorneys, also seems to have contributed to the delay. Defendant was personally contacting the Guilford County Clerk of Superior Court and requesting that the matter be put on for trial. But Defendant was represented by counsel, and it was Defendant's counsel who should have been asserting Defendant's right to a speedy trial, if Defendant requested this.
 
 Grooms,
 

 353 N.C. at 61
 
 ,
 
 540 S.E.2d at 721
 
 (citations omitted) ("Having elected for representation by appointed defense counsel, defendant cannot also file motions on his own behalf or attempt to represent himself. Defendant has no right to appear both by himself and by counsel.").
 

 Concerning the third factor, Defendant was asserting his right to a speedy trial through his multiple letters to the Guilford County Clerk of Superior Court. As noted above, Defendant should have made his requests through his counsel, and not directly. Yet Defendant's failure of process does not equate to an absence of an intent to assert his constitutional right to a speedy trial.
 

 Finally, concerning the fourth factor, Defendant must show that he "suffered significant prejudice as a result of the delay."
 
 Id.
 
 at 63,
 
 540 S.E.2d at 722
 
 . Defendant argued in his motion to dismiss that he was prejudiced by "an inability to adequately assist his defense attorney in preparation for his trial" and an inability "to locate any possible witnesses for the defense." Defendant does not make this same argument on appeal, and we fail to see how additional time to prepare for trial limited Defendant's ability to assist in his defense. Further, there is no record evidence of any witness Defendant could have called for trial whose testimony was lost due to the delay. The argument that a delay in bringing Defendant's case to trial could have somehow hindered Defendant's ability to "locate" witnesses is not a strong one, as witnesses are generally, and preferably, located before trial. Indeed, Defendant had a longer time to "locate" witnesses because of the delay, and Defendant does not argue that any potential witnesses became unavailable due to the delay.
 

 *699
 
 At the hearing on his motion to dismiss, Defendant argued that the delay hindered his ability to locate potential alibi witnesses. DNA testing confirmed that Defendant was the father of the child and Defendant has not challenged the reliability of the DNA evidence presented at trial. The word "alibi" is derived from Latin and literally means "elsewhere, somewhere else." An alibi witness normally provides evidence that a defendant was "somewhere else" when the alleged crime occurred. Considering the DNA evidence of paternity, Defendant does not explain how an alibi witness might be of assistance in this case.
 

 During the hearing, Defendant's counsel also argued the following:
 

 [I]t has been an oppressive pretrial incarceration. His anxiety, for lack of a better word, is certainly through the roof. Any time I've spoken with [Defendant], he has always been anxious: When am I going to be able to go to court, when can I be heard on this matter. He's been unable to, you know, to be with his family, being held under a certainly high bond which he cannot afford to make.
 

 On appeal, Defendant's only arguments related to prejudice are that Defendant had "expressed his concern about his health and the impact of jail conditions upon
 
 him
 
 after his first 100 days of incarceration[,]" and that he continued to express concerns about his health. Defendant was "also concerned about his inability to contact his lawyer or his relatives[,]" and he argued that "[t]hree and one-half years of sitting in a jail cell making repeatedly ignored requests to at least be brought into a courtroom [was] prejudicial." But Defendant did not make any arguments concerning his health in his motion to dismiss or at the hearing on that motion. Nor did Defendant argue that he was unable to communicate with his attorneys as a result of the time it took to bring this matter to trial. The only arguments Defendant made to the
 
 *586
 
 trial court, that he now makes on appeal, are that the delay in bringing the matter to trial interfered with his ability to be with his family and caused him anxiety. It is obvious that Defendant's pre-trial incarceration limited his freedom to interact with his family, and we do not doubt that it also caused Defendant more generalized anxiety. But these things happen to all defendants who are incarcerated prior to trial, and Defendant fails to prove prejudice beyond that normally associated with incarceration.
 

 We hold that although the nearly three and one-half year delay between Defendant's indictment and his trial on these matters was long, and that Defendant's prolonged pre-trial incarceration necessarily caused him hardship, the delay was not caused by the prosecution's neglect or willful misconduct, so Defendant has failed to show that
 
 *700
 
 this delay rises to the level of a violation of his constitutional rights, as required by
 
 Grooms. Grooms,
 

 353 N.C. at 62
 
 ,
 
 540 S.E.2d at 721
 
 . This argument is without merit.
 

 II. Motion to Dismiss Indecent Liberties Charge
 

 In Defendant's next argument, he contends the trial court erred in failing to dismiss the charge of taking indecent liberties with a child at the close of all the evidence because the State failed to introduce substantial evidence of that charge. We disagree.
 

 When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied.
 

 State v. Earnhardt,
 

 307 N.C. 62
 
 , 65-66,
 
 296 S.E.2d 649
 
 , 651-52 (1982) (citation omitted).
 

 To survive a motion to dismiss, the State was required to present substantial evidence that Defendant "[w]illfully [took] or attempt[ed] to take any immoral, improper, or indecent liberties with [Mary, who was] under the age of 16 years[,] for the purpose of arousing or gratifying sexual desire [.]" N.C. Gen.Stat. § 14-202.1(a)(1) (2013). Defendant specifically contends that the State failed to present sufficient "proof of a purpose to arouse or gratify sexual desire." Mary testified that Defendant repeatedly raped her while she was a child living in Defendant's house and under Defendant's protection. Defendant argues that evidence of "vaginal penetration" of a victim is, by itself, insufficient to prove a rape was "for the purpose of arousing or gratifying sexual desire[.]"
 

 Id.
 

 In support of this argument, Defendant cites the following footnote in
 
 State v. Weaver:
 
 "We also note, however, that recent scientific literature suggests that most rapists do not act 'for the purpose of arousing or gratifying sexual desire,' (as the indecent liberties statute requires) but to satisfy a powerful aggressive need."
 
 State v. Weaver,
 

 306 N.C. 629
 
 , 636 n. 2,
 
 295 S.E.2d 375
 
 , 379 n. 2 (1982),
 
 disapproved of on other grounds by
 

 State v. Collins,
 

 334 N.C. 54
 
 ,
 
 431 S.E.2d 188
 
 (1993). This footnote was used in
 
 Weaver
 
 as additional explanatory information to the following sentence in the main body of that opinion: "We note that sexual purpose
 
 may
 
 be inherent in an act of rape."
 
 Weaver,
 

 306 N.C. at 636
 
 ,
 
 295 S.E.2d at 379
 
 .
 

 We first note that the motivation behind any particular rape may be difficult to determine with certainty and can be normally only be inferred
 
 *701
 
 from circumstantial evidence. For example, the motivation behind the repeated statutory rape of a child living under the perpetrator's roof is likely different than the motivation for a violent assault and rape of an adult stranger. It is the province and duty of the trier of fact to make necessary determinations concerning motivation from the evidence before it. In any event, the above footnote in
 
 Weaver
 
 does not stand for the proposition that the State must always prove something more than vaginal penetration in order to satisfy the "purpose of arousing or gratifying sexual desire" element of taking indecent liberties with a child. This footnote, which is
 
 dicta,
 
 simply illustrates the fact that sexual desire cannot be
 
 assumed
 
 to be the motivation behind all sexual assaults.
 

 In the case before us, the evidence presented a jury question. A jury would not be
 
 *587
 

 required
 
 to find that Defendant acted "for the purpose of arousing or gratifying sexual desire" based upon the evidence presented by the State. But the trial court was correct in allowing the jury to make the determination of whether the evidence of Defendant's repeated sexual assaults of Mary were "for the purpose of arousing or gratifying sexual desire[.]" The trial court did not err in denying Defendant's motion to dismiss the charge of taking indecent liberties with a child.
 

 III. Satellite-Based Monitoring
 

 In Defendant's final argument, which we address in response to his petition for writ of
 
 certiorari,
 
 he contends that "the trial court erred by finding that a violation of N.C. Gen.Stat. § 14-27.7A was a reportable conviction under N.C. Gen.Stat. § 14-208.6(4) where the offense occurred prior to December 1, 2006[.]" We agree.
 

 In order for Defendant to have been sentenced to any level of satellite-based monitoring, he had to have been "convicted of a reportable conviction as defined by G.S. 14-208.6(4) [.]" N.C. Gen.Stat. § 14-208.40A(a) (2013). For the purposes of the present case, N.C. Gen.Stat. § 14-208.6(4) defines "reportable conviction" as "[a] final conviction for an offense against a minor, [or] a sexually violent offense[.]" N.C. Gen.Stat. § 14-208.6(4)(a) (2013). Defendant was not convicted of "an offense against a minor" as that term is specifically defined by the applicable statutes.
 
 [2]
 
 The trial court indicated in its order imposing
 
 *702
 
 lifetime satellite-based monitoring for the statutory rape conviction that statutory rape was "a sexually violent offense under G.S. 14-208.6(5) [.]" Though statutory rape pursuant to N.C. Gen.Stat. § 14-27.7A would constitute a sexually violent offense for acts committed on or after 1 December 2006, violation of N.C. Gen.Stat. § 14-27.7A did not constitute a sexually violent offense for acts committed prior to 1 December 2006. N.C. Gen.Stat. § 14-208.6(5) (2005) ; 2006 Sess. Laws 247, § 1(b). It is undisputed that the acts for which Defendant was convicted occurred in 2005. Defendant's 2005 violation of N.C. Gen.Stat. § 14-27.7A cannot constitute a "sexually violent offense" for the purposes of N.C. Gen.Stat. § 14-208.6(5) and, therefore, cannot constitute a "reportable conviction" for the purposes of N.C. Gen.Stat. §§ 14-208.6(4) and 14-208.40A(a).
 

 Because Defendant's conviction for statutory rape, based upon acts committed in 2005, cannot be considered a "reportable conviction" for the purposes of N.C. Gen.Stat. § 14-208.40A(a), Defendant was not eligible for satellite-based monitoring for this offense. We therefore vacate the 6 November 2014 Judicial Findings and Order for Sex Offenders (entered 10 November 2014) that was entered based upon Defendant's conviction for statutory rape pursuant to N.C. Gen.Stat. § 14-27.7A(a).
 
 See
 

 State v. Oliver,
 

 210 N.C.App. 609
 
 , 621,
 
 709 S.E.2d 503
 
 , 511 (2011).
 

 NO ERROR IN PART, VACATED IN PART.
 

 Judges STEPHENS and DAVIS concur.
 

 [1]
 

 This section was recodified as N.C. Gen.Stat. § 14-27.25 by 2015 Sess. Laws 181, § 7(a), effective 1 December 2015.
 

 [2]
 

 " 'Offense against a minor' means any of the following offenses if the offense is committed against a minor, and the person committing the offense is not the minor's parent: G.S. 14-39 (kidnapping), G.S. 14-41 (abduction of children), and G.S. 14-43.3 (felonious restraint). The term also includes the following if the person convicted of the following is not the minor's parent: a solicitation or conspiracy to commit any of these offenses; aiding and abetting any of these offenses." N.C. Gen.Stat. § 14-208.6(1m) (2013).